Morning, Your Honors. John Ballas on behalf of Cy Irving Brown. I'm intending to keep about two minutes for rebuttal. I was planning on talking about two of the three issues in my brief today, the insufficiency of the evidence and the sentencing issue, unless the Court would have any questions on the jurisdictional issue. In terms of the insufficiency of the evidence, there was no question that there was a bank rob. The only issue was the identification of the robber. There were two people that testified that saw the robber. Neither one were able to identify Mr. Brown as the person they saw, in part because the robber had a rag over his face. But both of them described the robber in terms that was different than Cy Irving Brown. The teller described the robber as not more than six feet in slender. The security guard who saw the robber leave the bank and then outside the bank said the robber was six feet tall, skinny, 25 to 32. And Mr. Brown is six foot three, at least three inches taller than what they both described. He weighs about 205 pounds, more of a medium build. You wouldn't describe that as skinny or slender. And he was older than what the security guard said. There's also was evidence that possibly linking another suspect or someone other than Mr. Brown. There was three things I pointed to in my brief. One is that there was a hat that was found in connection with the robbery that showed DNA from three different people, and none of those matched Mr. Brown. Second, there was a fingerprint found on the outside of the driver's door handle that did not match Mr. Brown. I mean, there's always going to be some evidence that points the other way, which is naturally the evidence that you're pointing to. But isn't the more germane question whether evidence exists that allows a rational finder of fact to find beyond a reasonable doubt that Brown was the robber? And wouldn't that include the fact that he borrowed the truck that was used as the getaway truck from his sister, that the guard saw him, he has a bike, the guard saw him going on a bike, saw him get into that truck, that shoes that his girlfriend bought for him were found with other stuff from the bank robbery, and that his DNA was on the do-rag and on the blue cap, and that his story about lending the truck to somebody he didn't know was just wholly implausible, and he testified, and therefore the jury could find the opposite? Well, I think the Court does have the correct standard. It's whether any rational juror could find beyond a reasonable doubt. But I don't believe his testimony was totally implausible. He was a crack addict who don't necessarily make the best judgments. He testified that he gave the loaned truck to a crack cocaine dealer for an hour or two in exchange for three rocks of crack cocaine. I think that's a plausible explanation. The standard has to be sufficient evidence to conclude that his version of the events, a rational juror could conclude beyond a reasonable doubt that his version was untrue. Do we have a physical description in the record of BJ, the person who, according to Mr. Brown, did the robbery? I don't remember that. Mr. Brown, if he had described BJ, or we had a picture of BJ showing him to be tall and skinny. Right. Well, I may not recall this precisely correctly, but my recollection is that he was sort of asked that question, and Brown was, and more or less said, well, at the time, I could probably have described him, but can't now? I mean, that's the gist of what I remember him saying. He was, I mean, Mr. Brown wasn't arrested until quite some time afterwards. He was arrested in Oregon. No, in Yakima. Yeah. Wasn't it Yakima? What's that? Oh, yeah. I'm sorry. In Yakima. And so he was testifying kind of years later, and he only saw BJ for a short period of time at the park. But the real answer to the question is no, there is nothing in the record to show what he was. I don't think so. I think that's right. In terms of the sentencing issue. Which one? In terms of, I think, why we should get a limited remand under Ameline, the government has argued that because the judge gave an upward departure, that that shows that a limited remand, the judge would have just given the same sentence, and that there is three cases I cited from other circuits, the Seventh Circuit, the Sixth Circuit and the Fourth Circuit, who kind of disagree with that conclusion, that just because a court departs upward doesn't mean that now, after Booker, when you're looking at the 3553A factors, where the whole universe of potential facts that are relevant for sentencing is a lot broader, the issues are different, that the Court would give the same sentence. And in this case, in fact, there were some things presented to the judge that the judge didn't determine were sufficient for departure, but he may find it to be relevant under a 3553A analysis and impose a lower sentence under remand. Of course, it could get worse, too. I want to make sure that your client understands that if that door is open and we agree to let it go back and the judge decides that maybe he would have sentenced differently, that maybe he would have sentenced differently. That's a very good point, especially under the record here. In fact, my client has asked me to put this issue in the brief, but I'd almost like another opportunity to talk with him and to make sure that that he understands completely what the possibilities are. And if the Court is considering to give an amyline remand, a limited remand, to give me time to make sure that that's what he wants to do. I think I've seen that in other cases where the other be done here or it could be done in the district court. I mean, I don't think that makes much difference. Right. And it may be that I can, if I can, even if the Court does a remand, I can talk with him, and if he decides it's not worth it, he doesn't want to take the risk, then we can just notify the district court. But in other words, if we sustain the conviction and give an amyline remand, you want to make our order to make clear that you've not made a definitive request at this time. I would make that request. Okay. That's going to save my remaining time for rebuttal. Thank you. Mr. Flynn. May it please the Court, Thomas Flynn for the United States. I think that the Court has put the issue exactly right on the sufficiency and that the defense is using the wrong case. It's easy to slip over into this other mode of analysis. I'd note that Mr. Ballas ended his discussion of that by saying the question was whether or not a reasonable person could conclude that Mr. Brown's description and explanation was untrue. That's not the case. It's whether or not the government's case is sufficient, not whether the defendant's case is insufficient. The only other two things I'd like to say is one is this argument that the defense has made about poverty alone not being enough. The very case he cites goes on to say that poverty connected with drug addiction is enough, and that's exactly what we have here. Mr. Brown admitted that he was an addict. He actually bought cocaine during his explanation of the events. And finally, on the Ameline issue, it seems to the government that if you look at what Judge England actually did, the defendant was convicted while he was in Oregon. Under Oregon law, the offense he committed here didn't count to enhance his sentence. Then when he came back here, the sentence in Oregon could not count towards making him a career offender here in California because it was committed afterwards. And there's an extensive discussion at sentencing by the prosecutor and Judge England about how Mr. Brown has really gotten a break here, and that if it wasn't for this disparity between the laws of the two states, he would have been a career offender here and would have gotten a 360-to-life sentence. And the government's argument was that the court should depart upward to take account of that, Judge England did, but if you read the transcript, you can see that in that he felt a little sorry for Mr. Well, maybe more than a little sorry for Mr. England, and therefore did not depart upwards as much as we think he did. I think under those facts, a remand is not appropriate here because it's clear that the judge has already cut this man a break. Finally, I'd point out that in the defendant's brief, the factors that he points to as showing sympathy by Judge England have to do with Mr. England's conduct in prison and the judge's hope that his time in prison will help him come out as a productive member of society. They're not really factors as to what the sentence the judge should give. And if there aren't any further questions, I'll submit it. Okay. Thank you very much. Thank you. Kagan. Just briefly on that last point, I don't think the standard is whether Judge England gave him a break at the initial sentencing or whether he could have potentially departed higher upward. The standard is whether on the court remands, it's clear from the record that he would impose the same sentence. I don't think you can say that in this case. Thank you. All right. Thank you, counsel. Both of you. The matter just argued will be submitted.
judges: Rymer, W. Fletcher, Clifton